**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-1850
_____

NILANI ARULANANTHARASA,
a/k/a Aarabi Kulendran,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A088-376-131)
Immigration Judge: Honorable Henry S. Dogin

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 25, 2010

Before: RENDELL, FISHER and GARTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed: August 27, 2010)

_____

OPINION
_____

PER CURIAM

Nilani Arulanantharasa seeks review of the Board of Immigration Appeals'

("BIA") February 26, 2009 order dismissing her administrative appeal and denying her

motion to reopen. In the order, the BIA affirmed the Immigration Judge's ("IJ") decision to deny Arulanantharasa's application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). For the reasons that follow, we will grant the petition for review in part, deny it in part, and remand the case for further proceedings consistent with this opinion.

## II.

Arulanantharasa is a Tamil and a native of the Northern Province of Sri Lanka. She entered the United States without valid documents on April 1, 2007. She was later served with a Notice to Appear charging her with entering the country without inspection. She conceded removability and filed petitions for asylum, withholding of removal, and relief under the CAT on grounds that she had been threatened and tortured while living in Sri Lanka and that, if she were to return, her life would be in danger on account of her ethnicity.

Three incidents gave rise to Arulanantharasa's claim. First, in January 2003 she was detained by army officials. She claimed that the army suspected her of being a member of the Liberation Tigers of Tamil Eelam ("LTTE"). She was interrogated, threatened, and later released. After this incident, her mother arranged a marriage, which took place in India in July 2003. Her husband, also a native Sri Lankan, had been granted asylum in the United States. After the wedding, Arulanantharasa returned to Sri Lanka and her husband returned to the United States.

2

The second incident took place shortly after her return to Sri Lanka, in August 2003. Arulanantharasa claims that her sister-in-law had come to visit her. During the visit, the two were arrested by army officials and taken to a camp. Arulanantharasa claimed that the two were separated at the camp, and that she never heard from her sister-in-law again. Arulanantharasa also claimed that she was interrogated, beaten, and burned with cigarettes. She was released three days later, but claimed that after her release, members of the LTTE questioned her about her visit to the army camp. They suspected her of being a government sympathizer and threatened to kill her if she had further contact with the army.

Arulanantharasa alleged that she was rounded up and questioned by the army and members of the Karuna[1] group several times over the next four years. Then, in March 2007, she was again arrested and taken to the army camp. She claimed that she was beaten, threaten, tortured, and that two men attempted to rape her. She remained in the camp for thirteen days, until her mother bribed an official to secure her release. Her mother also made arrangements for Arulanantharasa to leave the country. On March 23, 2007, Arulanantharasa went to Colombo, Sri Lanka, and later to Singapore and Hamburg, and finally arrived in the United States on April 1, 2007.

To support her claims, Arulanantharasa submitted a letter written by her mother

---

[1]The Karuna group consisted of former members of the LTTE who split from the group and began assisting the Sri Lankan government in its battle against the LTTE.

that briefly described the three incidents. In addition, she submitted an affidavit from her husband that stated that she had entered the United States on April 1, 2007. On December 26, 2007, the IJ made an adverse credibility determination and denied all relief. The IJ identified inconsistencies between Arulanantharasa's testimony and her asylum application, and important omissions from her mother's letter.

Arulanantharasa filed a notice of appeal with the BIA as well as a motion to reopen and remand. Upon review, the BIA dismissed the appeal and denied the motion to reopen and remand. Arulanantharasa filed a timely petition for review of the BIA's decision.

### III.

This Court has authority to review final orders of removal. See 8 U.S.C. § 1252(a). "[W]hen the BIA both adopts the findings of the IJ and discusses some of the bases for the IJ's decision, we have authority to review the decisions of both the IJ and the BIA." Chen v. Ashcroft, 376 F. 3d 215, 222 (3d Cir. 2004). The BIA's factual determinations are upheld if they are supported by reasonable, substantial, and probative evidence on the record considered as a whole. INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992). We review an adverse credibility determination under the substantial evidence standard. Xie v. Ashcroft, 359 F.3d 239, 242 (3d Cir. 2004). Under this deferential standard of review, this Court must uphold a credibility determination unless "any reasonable adjudicator would be compelled to conclude to the contrary." Gao v.Ashcroft,

4

299 F.3d 266, 272 (3d Cir. 2002) (quoting INA § 242(b)(4)(B)).[2]

In her opening brief, Arulanantharasa argues that the IJ's adverse credibility determination is unsupported by the record and the result of his bias.[3] She also argues that the IJ and BIA failed to consider evidence of current conditions in Sri Lanka and, in doing so, improperly denied her claim for relief under the CAT. Lastly, she argues that the BIA applied the wrong standard of review in denying her motion to reopen.

First, we conclude that the adverse credibility determination in this case is supported by substantial evidence. The IJ and BIA identified several substantive inconsistencies between Arulanantharasa's testimony and her asylum application, as well as important omissions from her mother's letter. Specifically, Arulanantharasa failed to mention in her asylum application that she was threatened by Army members during the first incident and her mother's purported affidavit failed to mention Arulanantharasa's sister-in-law's disappearance following the second incident. In addition, we agree that Arulanantharasa's mother's affidavit appears to have been altered, thus undermining the

---

[2]Because Arulanantharasa filed her asylum application after May 11, 2005, the provisions of the REAL ID Act governing credibility determinations in asylum applications apply. See Chukwu v. Att'y Gen. of the U.S., 484 F.3d 185, 189 (3d Cir. 2007). Under the REAL ID Act, a trier of fact may base a credibility determination on inconsistencies, inherent implausibilities, inaccuracies, and other factors, without regard to whether they relate to the heart of an applicant's claim. See INA § 208(b)(1)(B)(iii).

[3]In a related claim, she argues that because the IJ was biased, her due process rights were violated.

credibility of the document.[4]  Her mother's letter also failed to indicate that Arulanantharasa suffered any injuries, namely burns, during the second incident or that two men attempted to rape Arulanantharasa during the third incident.  Lastly, Arulanantharasa failed to present credible evidence showing that she was present in Sri Lanka between 2004 and 2007.  The record does not compel reversal.

We also conclude that Arulanantharasa's argument that the IJ was biased, and therefore prejudged her case, lacks merit.  To support her claim, Arulanantharasa points to the IJ's comments during the administrative hearing and identifies several instances where he interrupted her testimony, and one instance where he overruled an objection by her counsel.  However, we have previously held that it is appropriate for an IJ to question a petitioner's factual assertions, as "that type of evaluation is integral to the weighing of testimony and evidence that is typically required to make a credibility determination." Abdulrahman v. Ashcroft, 330 F.3d 587, 596 (3d Cir. 2003).  Accordingly, we conclude that there was no due process violation as the record fails to show that the IJ harbored any bias against Arulanantharasa.

Arulanantharasa also argues that her Tamil ethnicity and the fact that she lives in the Northern Province of Sri Lanka establish her eligibility for relief under the CAT,

---

[4]Her mother's letter had been altered to say "sister-in-law" instead of "brother-in-law" in connection with the second incident.

notwithstanding the adverse credibility ruling.[5]  To qualify for CAT relief, an applicant must show that it is more likely than not that he or she will be tortured upon returning to the country of removal.  See 8 C.F.R. § 208.16(c)(2).  In making this determination, the IJ can take into account evidence of past torture upon the applicant, the ability of the applicant to relocate to a safer section of the country, evidence of gross human rights violations on the part of the country's government, and country conditions.  Id.

We agree with Arulanantharasa that the BIA overlooked her additional argument in her administrative appeal that, notwithstanding the adverse credibility determination, she is entitled to relief under the CAT because she is likely to be tortured in the future "due to the fact that she is a young Tamil from the Northeastern part of Sri Lanka."  (A.R. at 20.)  Arulanantharasa argues that the documentary evidence she submitted with her application supports her claim.

Although we express no opinion as to the merits of the claim, we agree with Arulanantharasa that the BIA should have reviewed the argument on appeal.  As we have said before, "a decision-maker must review claims for relief under the [CAT] and consider evidence of relevant country conditions even where adverse credibility determinations have precluded relief under the INA."  See Tarawally v. Ashcroft, 338 F.3d 180, 188 (3d Cir. 2003).  Accordingly, we remand this issue to the BIA so that it

---

[5]She also argues that the IJ and BIA failed to consider country conditions in Sri Lanka before ruling on her claim.

may evaluate it in the first instance.  See INS v. Ventura, 537 U.S. 12, 16 (2002);

Silva-Rengifo v. Att'y Gen., 473 F.3d 58, 71 (3d Cir. 2007).

Lastly, Arulanantharasa argues that the BIA applied the wrong standard of review in denying her motion to reopen.  Specifically, she claims that the BIA erred by failing to use the established "prima facie" standard of review.  (Pet. Br. at 37.)  We disagree.[6]  In a motion to reopen removal proceedings, the alien must proffer "new facts to be proven at a hearing to be held if the motion is granted," and the motion "shall be supported by affidavits or other evidentiary material."  8 C.F.R. § 1003.2(c)(1).  A motion to reopen proceedings "shall not be granted" unless it appears to the Board that the evidence offered "is material and was not available and could not have been discovered or presented at the former hearing."  Id.  The Board may deny a motion to reopen proceedings on any of the following grounds: (1) the alien has failed to establish a prima facie case for the underlying substantive relief; (2) the alien has failed to introduce previously unavailable and material evidence; and (3) if the underlying substantive relief is discretionary, the Board may decline to consider the first two threshold requirements and, instead, determine that the alien would not be entitled to the requested discretionary grant of

_____

[6]We review the BIA's denial of a motion to reopen for abuse of discretion.  INS. v. Doherty, 502 U.S. 314, 323 (1992).  Under this standard, we will reverse the BIA's decision only if it is arbitrary, irrational, or contrary to law.  Sevoian v. Ashcroft, 290 F.3d 166, 174 (3d Cir. 2002).  The prima facie standard for a motion to reopen requires the applicant to produce objective evidence showing a reasonable likelihood that he can establish that he is entitled to relief.  Id. at 175.

8

relief.  See Doherty, 502 U.S. at 323 (citing INS v. Abudu, 485 U.S. 94, 104-05 (1988)).

"As a general rule, motions to reopen are granted only under compelling circumstances."

Guo v. Ashcroft, 386 F.3d 556, 561 (3d Cir. 2004).

Here, the BIA declined to reopen the case because Arulanantharasa proffered only a savings account booklet, from a Sri Lankan bank, showing activity in 2005.  The BIA concluded that this additional information went only to her lack of corroborating evidence demonstrating her presence in Sri Lanka between 2004 and 2007.  However, it did not cure the adverse credibility ruling in the case, which provided an appropriate basis for the denial of asylum.  Although the BIA may not have expressly stated the term "prima facie," it appropriately based its decision on the requirements of  § 1003.2(c)(1) and Doherty.  We agree that the evidence that Arulanantharasa presented with her motion to reopen was not material nor did it establish a prima facie case for the relief sought. Accordingly, the BIA did not abuse its discretion in denying her motion to reopen.

Based on the foregoing, we will grant the petition for review in part, deny it in part, and remand the case for further proceedings consistent with this opinion.